IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SHAUN LEE THOMAS,<br>    Movant, | CRIMINAL NO.<br>1:09-CR-0105-TCB-GGB |
| v. | CIVIL ACTION NO.<br>1:12-CV-03676-TCB-GGB |
| UNITED STATES OF AMERICA,<br>    Respondent. | MOTION TO VACATE<br>28 U.S.C. § 2255 |

## ORDER, FINAL REPORT AND RECOMMENDATION

Shaun Lee Thomas ("Thomas" or "Movant") has filed a motion to vacate his sentence under 28 U.S.C. § 2255 (Doc. 150). Movant seeks to challenge the constitutionality of his life sentence that was imposed on November 22, 2010 (Doc. 129), following his jury trial and the guilty verdict returned on September 3, 2010 (Doc. 120). Presently before the Court for consideration are: (1) Movant's § 2255 motion to vacate (Doc. 150); (2) the United States of America's (hereinafter "Government") response to Movant's motion to vacate (Doc. 155); and (3) the Government's Motion for Leave to File Excess Pages (Doc. 156).

AO 72A
(Rev.8/82)

# I. BACKGROUND

## A. Procedural background

After a jury trial, Thomas was convicted of three counts of sexual abuse of M.T., a child under the age of 12, in violation of 18 U.S.C. § 2241(c). The district court sentenced Thomas to life in prison. (Doc. 129). Thomas appealed his conviction to the Eleventh Circuit Court of Appeals. That Court affirmed Thomas's conviction on October 20, 2011. (Doc. 148); United States v. Thomas, 443 F. App'x 501 (11th Cir. 2011). On October 19, 2012, Thomas filed this Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody. (Doc. 150).

## B. Evidence from the trial

In November of 2008, M.T. was seven years and lived with her mother and older sister, L.T., in Virginia. (Doc. 136 at 30, 31). Thomas is M.T.'s biological father and lived in Atlanta. (Id. at 31, 34). In November of 2008, Thomas, M.T., L.T., and Thomas's parents took a cruise on a Carnival cruise ship that left from Jacksonville, Florida, made stops in the Bahamas, and returned to Jacksonville on November 24, 2008. (Doc. 139 at 40, 50, 52).

2

AO 72A
(Rev.8/82)

During the cruise, while Thomas and M.T. were alone in a cabin, Thomas committed a sexual assault on M.T. that included Thomas penetrating M.T.'s anus with his penis. (Doc. 137 at 47). M.T. bled on her underwear which Thomas took from her. (Id. at 56, 88). M.T. did not disclose the assault to anyone during the cruise. (Id. at 58).

Thomas's girlfriend, Nykia Cheeks, unpacked his suitcase when he returned from the cruise. (Doc. 138 at 128). She recovered a pair of little girl's underwear that had a large brown stain on them. (Id. at 128-129). She washed the underwear several times because the stain would not come out. (Id. at 130). When she asked Thomas about the underwear he told her that his daughter had had an accident on the cruise. (Id. at 130-131).

Sometime after the cruise, M.T. told her mother about the assault. (Doc. 136 at 41-42). Her mother called the police and had M.T. examined by a doctor. (Id. at 47).

After speaking with law enforcement officers in February 2009, Cheeks found and gave to law enforcement officers a pair of little girl's underwear that she believed may have been the underwear she recovered from Thomas's suitcase. (Doc. 138 at 141-142). Neither M.T.'s nor Thomas's DNA was found on that underwear. (Id. at 85).

3

Additional facts are discussed in context below.

## II. DISCUSSION

### A. Thomas's claim of a due process violation due to the Government's alleged failure to prove nationality is procedurally defaulted.

The indictment alleged that Thomas's offenses took place within the special maritime and territorial jurisdiction of the United States. (Doc. 10). Title 18 U.S.C. § 7 states that the term "special maritime and territorial jurisdiction of the United States" includes:

> . . . (8) To the extent permitted by international law, any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States.

Thomas alleges that his constitutional right to due process was violated because the Government failed to present evidence that either M.T. or Thomas were nationals of the United States. However, this claim is procedurally defaulted because it was not raised on direct appeal.

Generally, a petitioner must advance an available challenge to his conviction on direct appeal, or else this Court must consider the challenge procedurally barred in a § 2255 proceeding. Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994). "[Thomas] can avoid a procedural bar only by establishing one of the two exceptions

4

to the procedural default rule.  Under the first exception, [Thomas] must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).  "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Lynn, 365 F.3d at 1234-35 (quoting Mills, 36 F.3d at 1055).

"[T]o show cause for procedural default, [Thomas] must show that some objective factor external to the defense prevented [Thomas] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [Thomas's] own conduct." Id. at 1235 (citing Smith v. Jones, 256 F.3d 1135, 1145 (11th Cir. 2001)).  "Actual prejudice" requires Thomas to show that the alleged error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Reece v. United States, 119 F.3d 1462, 1467 (11th Cir. 1997) (citation omitted).

Alternatively, Thomas may still avoid the procedural bar by showing that the failure to address the alleged error would result in a fundamental miscarriage of

justice, meaning that "the alleged error has probably resulted in the conviction of one who is actually innocent." Jones v. United States, 153 F.3d 1305, 1308 (11th Cir. 1998). "[A]ctual innocence means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623. Accordingly, Thomas must establish that "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." Id.

None of the exceptions to the procedural default rule apply in this case to excuse Thomas's failure to raise the "nationality" issue on direct appeal.

### B. Even if Thomas's nationality claim was not procedurally barred, the claim is without merit.

The record contains M.T.'s birth certificate which establishes that she was born in the state of Virginia. (Doc 155 at 26, citing Docs. 116; 139 at 217-218; Def. Ex. 13 at 13).[1] Further, the Eleventh Circuit stated that "the evidence showed that the offense was committed on a foreign vessel, and **against a national of the United States**." Thomas, 443 F. App'x at 503 (emphasis added). Thus, even if Thomas's

---

[1] Defendant's Exhibit 13 is not filed on the docket of the case. However, I have reviewed that exhibit, which is on file in the district court clerk's office, and confirm that a copy of M.T.'s birth certificate showing that she was born in Virginia, is included in Exhibit 13.

6

claim that the Government failed to prove that either M.T. or Thomas was a U.S. national was not procedurally barred, that claim is without merit.

## C. Thomas's claim that the district court erred when instructing the jury regarding the jurisdictional elements of 18 U.S.C. § 7 was raised on appeal and may not be relitigated in this petition.

Thomas alleges that the district court erred in its jury instruction by omitting the jurisdictional elements of 18 U.S.C. § 7, authorizing the jury to convict Thomas without sufficient evidence of federal jurisdiction.

With respect to the elements of the offenses, the Court gave the following instructions to the jury:

> It's a federal crime for anyone within the special maritime and territorial jurisdiction of the United States to engage in or attempt to engage in a sexual act with a person younger than 12 years old. The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: (1) the Defendant knowingly engaged in or attempted to engage in a sexual act with (M.T.); (2) at the time, (M.T.) was younger than 12 years old; and (3) the acts occurred within the special maritime and territorial jurisdiction of the United States.
>
> * * * * *
>
> If you find beyond a reasonable doubt that the offense occurred at the location alleged and described in the indictment, you are instructed that the location would be within the special maritime and territorial jurisdiction of the United States.

(Doc. 139 at 163-164).

Thomas's counsel objected to this instruction on the ground that the court was

7

essentially directing a verdict in the Government's favor on the jurisdictional elements. (Doc. 139 at 148). The district court overruled the objection. (Id. at 150-151).

Thomas raised this issue on direct appeal. Specifically, Thomas argued on direct appeal that the jury was not properly instructed as to the jurisdictional elements of 18 U.S.C. § 7 and that the Government failed to present sufficient evidence that the offense occurred during "a voyage" as required by the statute. (Doc. 155-1 at 39). The Court of Appeals rejected this argument stating:

> We also reject Thomas's claim that the district court committed reversible error by incorrectly removing the jurisdictional element of the offense from the jury's deliberations. A defendant may be convicted under 18 U.S.C. § 2241(c) if he knowingly engages in a sexual act with another person who has not attained the age of 12 years in the special maritime and territorial jurisdiction of the United States. See 18 U.S.C. § 2241(c). Section 7 of Title 18 states that the special maritime and territorial jurisdiction of the United States includes "any foreign vessel during a voyage having a scheduled departure from or arrival in the United States with respect to an offense committed by or against a national of the United States." 18 U.S.C. § 7(8).
>
> In this case, even if the court incorrectly removed the elements of 18 U.S.C. § 7 from the jury's determination, the error was harmless. Thomas provides no legal support for his argument that a "voyage" under 18 U.S.C. § 7(8) does not encompass times when a ship is docked in a harbor. Additionally, we are aware of no relevant precedent. Therefore, the court did not plainly err by assuming that the incident occurred during a voyage as long as it occurred at some point on the cruise. See Lejarde-Rada, 319 F.3d at 1291.

8

> Furthermore, the evidence presented at trial conclusively established that the incident occurred on the ship at some point during the cruise which departed from and returned to Jacksonville, Florida. Moreover, the evidence showed that the offense was committed on a foreign vessel, and against a national of the United States.

Thomas, 443 F. App'x at 503-04.

"[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted). Because this issue was presented and rejected on direct appeal, it may not be re-litigated in this § 2255 petition.

**D.  Even if Thomas's claim regarding the jury instructions on the jurisdictional element of the offense could be considered by this court, it is without merit.**

In its pattern instructions, the Eleventh Circuit has adopted the position that, in cases charging aggravated sexual abuse on a minor in violation of 18 U.S.C. § 2241(c), "[w]hether the crime alleged occurred at a particular location is a question of fact [and] [w]hether the location is within the special maritime and territorial jurisdiction of the United States . . . . is a question of law." Judicial Council of the Eleventh Circuit, Pattern Jury Instructions (Criminal Cases), Offense Instruction

9

AO 72A
(Rev.8/82)

79.3, at 453 (2010); see also Krull v. United States, 240 F.2d 122, 130 (5th Cir. 1957) ("[I]f . . . the place where the offense was committed was sufficiently described, the court will take judicial notice of facts which vest the United States with jurisdiction . . . .").

Courts outside the Eleventh Circuit have also held that the question of whether a location falls within the purview of 18 U.S.C. § 7 is to be decided by the court. See United States v. Hernandez-Fundora, 58 F.3d 802, 810 (2d Cir. 1995) (approving, in a prison assault case, the district court's decision to remove from the jury's consideration the issue of whether a federal prison was within the special maritime and territorial jurisdiction of the United States, but reserve for the jury the question whether the assault occurred at the prison); United States v. Warren, 984 F.2d 325, 327 (9th Cir. 1993) ("A district court 'may determine as a matter of law the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is an issue for the trier of fact.'") (citation omitted); United States v. Gabrion, No. 1:99-CR-76, 2006 WL 1624551, at *1 (W.D. Mich. June 7, 2006) ("Whether property is within the special maritime and territorial jurisdiction of the United States is a question of law for the Court.") (citing United States v. Prentiss, 206 F.3d 960, 967 (10th Cir. 2000)).

10

Thus, even if Thomas's claim that the district court erred in its instructions on the jurisdictional element of the offense is properly raised in his § 2255 petition, that claim is without merit.

### E. Thomas's claims of ineffective assistance of counsel are without merit.

"Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Green v. Nelson, 595 F.3d 1245, 1249 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466 U.S. at 687). To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Additionally, to establish prejudice, a petitioner must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

In reviewing whether counsel's performance was deficient, the court gives particular deference to counsel's decisions on matters of trial strategy. Perez v. United States, 435 F. App'x 820, 823 (11th Cir. 2011) (citing Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)); see also Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). "'Judicial scrutiny of counsel's performance must be highly deferential,'" and courts must avoid second-guessing counsel's performance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 689). "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Id. (quoting Strickland, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" Chandler, 218 F.3d at 1314 (quoting Darden v. Wainwright, 477 U.S. 168 (1986)).

12

### 1. **Testimony of Karen Delano**

Thomas called as one of his witnesses, Karen Delano, a social worker with the Stafford County Department of Social Services. (Doc. 138 at 216). Thomas argues that trial counsel's failure to object to Karen Delano's testimony regarding M.T.'s credibility was objectively unreasonable and there was no "strategic reason" for trial counsel's failure to object. (Doc. 150 at 37).

Delano had interviewed M.T. on February 2, 2009 concerning the alleged sexual assault of M.T. by Thomas. (Doc. 138 at 217; Govt. Ex. 11). On direct examination, Thomas's counsel elicited from Delano the specific statements M.T. made to her during her interview. (Doc. 138 at 217-22). M.T. had described in detail to Delano how Thomas had sexually assaulted her and the circumstances surrounding the assault. (Id.).

During cross-examination, the Government counsel asked Delano to describe M.T.'s demeanor and how Delano perceived M.T. On several occasions during her cross-examination Delano described M.T. as credible. (Doc. 138 at 233).

On redirect examination, defense counsel followed up on the subject of M.T.'s credibility, asking whether Delano's testimony about M.T.'s credibility was based on whether a young child would be able to describe details of sexual assault. (Id. at 233-

13

234).  Defense counsel asked Delano whether her testimony about credibility would change if she had known that M.T. had previously viewed pornography.  (Id. at 234).  Delano conceded she was not aware that M.T. had seen pornography and that M.T.'s exposure to pornography could explain some things but not all.  (Id.).

On re-cross examination, Delano explained that M.T.'s detailed description of how sexual acts felt to her supported her statement that M.T. came across as credible. (Id. at 234-36).

Thomas argues that trial counsel's failure to object to Delano's testimony about M.T.'s credibility was objectively unreasonable and there was no "strategic reason" for trial counsel's failure to object.  (Doc. 150 at 37).

However, Thomas's counsel apparently had a strategic reason for his failure to object to Delano's testimony about M.T.'s credibility.  Counsel argued to the jury in his closing argument that M.T.'s viewing of pornography before she related the details of the alleged assault created doubt about M.T.'s credibility.  He emphasized in his argument that Delano had said in her re-direct testimony that M.T.'s exposure to pornography might affect her credibility.  (Doc. 139 at 204-205).  Thus, as stated by the Court of Appeals, "it appears that Thomas may have failed to object to Delano's testimony for strategic reasons."  Thomas, 443 F. App'x at 503.

14

Accordingly, under the applicable standards, trial counsel did not provide ineffective assistance.

### 2. Defense counsel's failure to call certain witnesses

Thomas argues that his trial counsel was ineffective in not calling his aunt, Delighter Baker, and her daughter (Thomas's cousin) D'Neille Ellis to testify at trial. Thomas has submitted affidavits from Ms. Baker and Ms. Ellis. Ms. Baker's affidavit relates that Ms. Cheeks told her that she was forced to provide the FBI with a pair of underwear because the FBI threatened to take her children from her if she did not comply. According to the affidavit, Ms. Cheeks further told Ms. Baker that the underwear that she provided to the FBI belonged to Ms. Cheeks's daughter. (Doc. 150-2). Ms. Ellis's affidavit similarly states that Ms. Cheeks stated that she (Ms. Cheeks) gave the FBI a pair of underwear because she was threatened by the FBI. (Doc. 150-3).

Ms. Cheeks testified at trial that she unpacked Thomas's suitcase when he returned from the cruise and that she retrieved from the suitcase a pair of little girl's underwear that had a large brown stain on them. (Doc. 138 at 128-129). She believed the stain was from feces. (Id. at 131). Ms. Cheeks later looked for the underwear at the request of the FBI. (Id. at 141). She found a pair of unstained little

15

girl's underwear in her house that did not belong to her own daughters. (Id.). In an abundance of caution she turned that pair of underwear over to the FBI, but she told the FBI that she strongly doubted that they were the same underwear that she had found in Thomas's suitcase. (Id. at 142, 151, 155). Neither M.T.'s nor Thomas's DNA was found on the underwear that was turned over to the FBI. (Doc. 138 at 85).

The affidavits of Ms. Baker and Ms. Ellis do not contradict the key testimony of Ms. Cheeks that she found a pair of stained little girl's underwear in Thomas's suitcase when he returned from the cruise. As Ms. Cheeks herself testified that she doubted that the underwear she turned over to the FBI were the same underwear found in Thomas's suitcase, and there was no relevant DNA found on the underwear that she turned over to the FBI, the testimony of Ms. Baker and Ms. Ellis would have added little or nothing to the defense. It was a reasonable strategy not to call Ms. Baker or Ms. Ellis as witnesses at trial. Thus, Thomas has not shown that his counsel was ineffective.

16

### 3. Failure to make particularized Rule 29 motion challenging government's evidence regarding M.T.'s or Thomas's citizenship

Thomas argues that his trial attorneys were ineffective for failing to make particularized Rule 29 motions challenging the sufficiency of the Government's evidence regarding M.T.'s or Thomas's citizenship. (Doc. 150 at 44).

Rule 29 of the Federal Rules of Criminal Procedure states that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

At the close of the Government's evidence, trial counsel Matthew Dodge stated:

> Your Honor, under Rule 29, we ask the Court to direct a verdict of not guilty on all three counts. The evidence is far insufficient to establish guilt on any of the three charges, and in fact it's not even strong enough to let it go to a jury to allow them to make that decision. The child's word is, in essence, all that they have. And although she said it several times, it's still just her word on it and there is no other evidence to corroborate it.

(Doc. 138 at 168.) The Court denied the motion. (Id.).

Later, at the close of the trial, trial counsel Akil Secret stated, "We renew our Rule 29, Your Honor. We don't think the evidence – the Government has carried its

17

burden, and we'd ask the Court to dismiss it pursuant to that rule." The Court again denied the motion. (Doc. 139 at 155).

Thomas has failed to show that counsel's performance was in any way deficient or that Thomas was prejudiced by his trial counsel's failure to mention the nationality issue in his Rule 29 motion. As set forth above, the record contains M.T.'s birth certificate that establishes that she was born in the state of Virginia. (Docs. 116; 139 at 217-218; Def. Tr. Ex. 13 at 13). Further, the Eleventh Circuit stated that "the evidence showed that the offense was committed . . . against a national of the United States." Thomas, 443 F. App'x at 503. Finally, even if the Government had neglected to prove that Thomas or M.T. were citizens of the United States, it is likely that the district court would have allowed the Government to reopen its case to offer such proof rather than dismiss an important case. "It is well established that a trial court may permit the reopening of a case in order that omitted evidence may be presented. Considerable latitude in discretion is vested in the trial court in such matters." United States v. Molinares, 700 F.2d 647, 652 (11th Cir. 1983) (citation omitted).

Thus, Thomas has failed to establish either the performance or prejudice prong required by Strickland.

18

### III. CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. §2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right. Accordingly, **I RECOMMEND** that a certificate of appealability be **DENIED**.

### IV. CONCLUSION

Based on the foregoing, I **RECOMMEND** that Movant's motion to vacate sentence (Doc. 150) be **DENIED.** It is further **RECOMMENDED** that a certificate of appealability be **DENIED**.

AO 72A
(Rev.8/82)

The Government's Motion for Leave to File Excess Pages (Doc. 156) is **GRANTED**.

The Clerk is **DIRECTED** to terminate the referral to me.

**IT IS SO ORDERED AND RECOMMENDED**, this 15th day of July, 2013.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)